## In re DELANEY.

### Patent Appeal No. 3079.

Court of Customs and Patent Appeals.

Jan. 23, 1933.

I. R. Paris, of Washington, D. C., and John Flam, of Los Angeles, Cal., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting all of the claims of appellant's application for a patent.

The rejected claims are Nos. 1 to 8, inclusive. Upon the oral argument before us, appellant's counsel withdrew the appeal as to claims 4 to 8, inclusive; therefore we have only claims 1, 2, and 3 before us for consideration.

Claim 2 is illustrative of the claims now in issue, and reads as follows: "2. Material adapted to be used for the finish of wall surfaces, comprising not more than three parts by volume of calcined gypsum, to two parts by volume of aggregate; and not less than one part by volume of the gypsum to four parts by volume of the aggregate; and effervescing matter sufficient to impart a spongy texture to the material when wetted."

The references cited are: Sanford, 230,-151, July 20, 1880; Ashenhurst, 1,230,085, June 12, 1917; Ashenhurst, Re. 15,952, November 25, 1924.

Appellant's alleged invention is described by the Board of Appeals in its decision as follows: "Appellant's disclosure relates to a material to be used for finishing wall surfaces to improve their accoustical qualities in a manner to prevent the surfaces acting as a reflector of sound. This is done by providing a finish material which has the capacity to absorb the sound energy. For this purpose appellant has provided a composition of binder material such as plaster of paris and an aggregate of sand or porous material such as pumice and an effervescing material. The effervescing material suggested to be used in the mixture comprises aluminum sulphate and calcium carbonate because it has the property of absorbing moisture. The effect of the effervescing material is to make the mixture of a more homogeneous spongy texture, to render it more cohesive and to cause the mixture to exhibit greater strength. It is stated to be for this reason that the applicant can use as poor a mixture of binder and aggregate as one to four without materially weakening the finish."

Appellant states in his specification that his claimed composition can be applied to a wall with an ordinary hawk and trowel.

The patent to Sanford is for a composition of matter adapted for use as heat-insulating material and for deadening sound. It discloses the combination of plaster of paris with one or more of the soluble alkaline bicarbonates, preferably carbonate of soda. The patentee states: "* * * When these ingredients, in proper proportions and with a sufficient quantity of water, are well mixed

a chemical change takes place and carbonic-acid gas is liberated, producing effervescence in the mixture, after which the mixture sets or hardens, forming an insoluble compound."

He also states that to increase the bulk and cheapen the composition, and in some cases to strengthen it, other materials, such as charcoal, sawdust, etc., may be added. He gives nine formulas for his composition. His first formula contains no aggregate. Formulas 2 to 8, inclusive, contain not exceeding 1¼ ounces of aggregate to 24 ounces of plaster of paris. His ninth formula, he states, is illustrative of his statement that aggregates such as sawdust, etc., may be added. This formula consists of 24 ounces of plaster of paris, three-fourths of an ounce of bicarbonate of soda, one-half ounce of rosin, one-half ounce of glucose, one-fourth ounce of glue, eighteen ounces of water, and four ounces of wet paper pulp.

It will be observed that the proportion of aggregate to the plaster of paris, considering the ingredients rosin, glucose, glue, and pulp as aggregates, is 5¼ ounces of aggregate to 24 ounces of plaster of paris, and, considering only the pulp as aggregate, it is in the proportion of 4 ounces of aggregate to 24 ounces of plaster of paris. The patentee emphasizes the importance of proper proportions, which he states may be varied through experiments. However, it is clear that he teaches that his composition, when finally mixed, should be in such liquid condition that it can be poured. In his specification he states: "In all cases the final mixing of each mixture should be made as quickly as a thorough mixing will permit. It should then be quickly poured where wanted and allowed to remain unagitated until it has finally set."

We think the teachings of Sanford contemplate a composition not adapted to be placed upon a wall by the use of hawk and trowel.

The patent to Ashenhurst, No. 1,230,085, is for a composition of matter adapted to be used as a heat-insulating material and sound deadener. He discloses a composition consisting of asbestos or other similar material, including plaster of paris, combined with calcium carbonate and aluminum sulphate. He states in his specification that: " * * * In some instances, it may be desirable that the material should set or harden more quickly, in which case I may add a quantity of plaster of Paris (substantially anhydrous calcium sulfate). * * * "

He further states: " * * * After the substance has been mixed with water it may be poured into a mold for walls, floors or ceilings of a building, or within the walls of a refrigerator, or it may be cast around furnaces or steam pipes, or it may be cast in molds and applied to these locations by other means. * * * "

The patent to Ashenhurst, Re. 15,952, is for a composition of matter in which the principal ingredient is gypsum or plaster of paris, combined with the same chemical elements recited in his said patent No. 1,230,085, and magnesium carbonate, which is termed a "retarder." The specification also states:

"Preferably also I mix with the materials a small quantity of fibrous material such as long fiber asbestos, or in the event the material is to be used where high heat is not to be resisted, cocoa or similar organic fibers. These fibers serve as reinforcements and strengthen the body of the material without adding to the weight thereof.

"In practice a satisfactory result may be secured by combining approximately 4 pounds of a suitable retarder with each ton of gypsum. This is a commercial product and is so furnished when desired by the concerns which market the material.

"In making up the compound herein described I prefer to employ approximately 20 parts by volume of the so-described gypsum, 2 parts by volume of magnesium carbonate and 2 parts by volume of aluminum sulphate. The carbonate employed, whether it be that specified or some of the other carbonates, is insoluble in water, but the aluminum sulphate, in commercial form, is soluble. Its reaction with water results in releasing a free acid—in this case sulphuric acid—which in turn reacts with the carbonate, releasing carbon dioxide. Where a reinforcing element is to be employed I may add long fiber asbestos or cocoa fiber in the proportion of approximately 5% by weight of the mass. This compound in its dry state is inert. However, when it is to be utilized a quantity of water is added thereto sufficient to make a thick paste whereupon the leavening action begins and the mass expands or 'rises,' the final volume being many times that of the mixture as formed. While stability of form is secured within a short time, the final hardening is not complete for 24 hours."

With respect to the use of plaster of paris or gypsum described in his said former patent, No. 1,230,085, the patentee states:

"My invention relates to heat insulating materials and particularly to a novel improvement in the composition of matter described in my prior Patent No. 1,230,085.

"In that patent I disclosed a composition of matter the major constituent of which was asbestos in comminuted form and suggested the possibility of employing other refractory materials including calcium sulphate or gypsum. However, long experiments failed to demonstrate any practical value in this suggestion inasmuch as an insulating material of sufficient lightness could not be produced by employing calcium sulphate as disclosed in that patent. While the reactions were prompt and vigorous and the material became exceedingly porous in character, it would not remain in that condition but immediately 'fell.' In other words, while the mass seemed to 'rise' in a most satisfactory manner and gave promise of the production of a solid body of extreme lightness, it invariably 'fell' and in its final form was much too heavy to be of practical use.

While in this second patent the patentee does not state that his composition is to be poured or cast in molds, we think his disclosure refers only to a composition to be used in a highly fluid state by pouring or casting in molds, inasmuch as the improvement claimed over his first patent does not in any way relate to the density of the composition when finally mixed.

The Solicitor for the Patent Office in his brief refers to this thick paste as being the final form of the composition after the addition of the water, but it is apparent from the reading of the specification that this is not correct.

The claims here in issue all provide a range of proportions of gypsum or binder and aggregate, from a maximum of three parts by volume of binder to two parts by volume of aggregate to a minimum of one part by volume of binder to four parts by volume of aggregate. None of the references approach these proportions, either in maximum or minimum. The nearest approach to these limits is that of Sanford, wherein, as we have above noted, the proportions are six to one, or five to one, of binder and aggregate.

We do not think that any of the references disclose a composition that may be applied to a wall by the use of hawk and trowel, nor do we think it is obvious, from the disclosures in such patents, that the proportions therein disclosed might be so varied as to result in the composition disclosed by appellant. Appellant has not discovered a new use for an old composition of matter, but he has discovered a new composition of matter adapted to a use not contemplated in any of the references.

The Solicitor for the Patent Office concedes the novelty of appellant's composition, but urges that the Patent Office tribunals were correct in holding that such composition did not involve invention in view of the references.

We are not in accord with this view. It is our opinion that one skilled in the art, upon examining the references, would be directed away from appellant's composition, rather than toward modifying the proportions therein set forth to produce appellant's composition. It is our view that appellant's composition is not only novel, but that it involved the exercise of the inventive faculty, and that claims 1, 2, and 3 are patentable.

For the reasons herein stated, the decision of the Board of Appeals is reversed as to claims 1, 2, and 3, and affirmed as to claims 4 to 8, inclusive.